**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | Civil Action No. 22-1034 (BAH) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc., by counsel and pursuant to Rule 56(c) of the Federal Rules

of Civil Procedure, respectfully submits this Reply in support of its Cross Motion for Summary

Judgment.  The FBI still has not shown it has conducted an adequate search.[1]

**I.      The FBI's Failure to Search Locations and Persons Likely to Possess Responsive
         Records Renders the Search Inadequate.**

Plaintiff expressly requested records from the New York Field Office ("NYFO").

Compl. at ¶ 5.  The FBI's repeated argument that it has no duty to search or even consult the

NYFO is unavailing.  Even with its supplemental declaration, the FBI fails to adequately explain

why it did not search the NYFO, which undoubtedly would be the most logical place to look for

records, as Plaintiff requested.  The warrants were executed in New York, New York.  *See* Plf's

Ex. 1 at 1; *see also* Plf's Ex. 2 at 1.  Clearly there were NYFO agents who participated in

executing the search warrants central to Plaintiff's FOIA request or had access to information

---

[1]     With the FBI's correction to the Seidel Declaration, Plaintiff accepts the FBI's
explanation for the discrepancy between its initial determination and final determination on the
existence of responsive records.  *See* Bender Decl., ¶ 5, n.1.

regarding these warrants.  Yet none were contacted by the FBI in its search.[2]  Def's Opp. at 4-8.
The FBI did not even contact NYFO Agent John Vourderis who signed the search warrants.
Plf's Ex. 1 at 5; Plf's Ex. 2 at 6.  In response, the FBI does not argue that NYFO agents with
access to relevant information are unlikely to possess responsive records.  Instead, the FBI raises
concern over potential violence if these records are subject to FOIA.  Bender Decl., ¶ 11.  Again,
the FBI is putting the cart before the horse.  It does not explain how merely searching the records
of these individuals could expose them to violence.  *Reporters Comm. for Freedom of the Press
v. United States DOJ*, No. 19-2847, 2021 U.S. Dist. LEXIS 215639, *10 (D.D.C. Nov. 8, 2021)
(whether an exemption could potentially apply to responsive records does not permit the agency
to refuse to search for these records).  The records of these officials, including but not limited to
NYFO Agent Vourderis, should have been encompassed within the FBI's search for responsive
records.

The FBI also attempts to avoid its FOIA obligations by relying upon the agency's media
policy.  Def's Opp. at 5-6; Bender Decl., ¶ 10.  But the FBI cannot assume the nonexistence of
records simply because agents are not supposed to communicate with the press.  The issue is not
whether the policy was followed.  It is whether the FBI conducted an adequate search.

In sum, limiting its search to the email accounts of six senior executive officials, as well as
its refusal to contact and search NYFO about responsive records, renders the FBI's search
inadequate.

## II.     The FBI's Search Terms Are the Result of an Improper Narrow Reading of Plaintiff's Request.

The FBI's Opposition makes it even clearer that it took the narrowest interpretation of

---

[2]      The FBI only searched the email account of NYFO Assistant Director in Charge Michael
Driscoll.  Seidel Decl., ¶ 26.

Plaintiff's request.  It argues that the request did not seek communications with The New York Times *regarding* the investigation into the alleged theft of Ashley Biden's diary.  Def's Opp. at 11.  This is entirely disingenuous.  The request gave specific relevant information on the search warrants that Plaintiff sought communications about, including who was the subject of the warrants and the dates they were executed.  Compl. at ¶ 5.  A mere skimming of those search warrants reveals they were executed pursuant to the investigation into the alleged theft of Ashley Biden's property.  Plf's Ex. 1 at 3; Plf's Ex. 2 at 3-4.  Terms associated with that investigation therefore should have been searched.  *See Avila v. United State Dep't of State*, No. 17-2685, 2022 U.S. Dist. LEXIS 104439, *12-13 (D.D.C. June 10, 2022).

Relatedly, the FBI refuses to search for the term "Times" in the email accounts, arguing that this would result in a large number of non-responsive emails.  Bender Decl., ¶ 24, n.10.  But doing so is not unduly burdensome.  First, the FOIA request asks for communications made within a short time frame between October 1, 2021 to November 24, 2021.  Compl. ¶ 5; Seidel Decl., ¶6 n.2.  Second, "Times" is an obvious logical variation of "The New York Times."  For instance, in response to a nearly identical FOIA request seeking communications between the Executive Office of U.S. Attorneys ("EOUSA") and The New York Times, the EOUSA produced an email that refers to the New York Times as simply "Times."  Plf's Ex. 3 at 1-6 (referring to The New York Times as "Times.").

The FBI rationalizes its failure to use a broader set of terms to search the CRS and the email accounts, stating it conducted a page-by-page review of an *unidentified* pending case file.  Def's Opp. at 10.  But this does not give the comfort that the FBI thinks it does.  First, there is the unresolved question of whether there are other files that would have responsive information if the search was broadened to include terms *regarding* the search warrants.  Second, Plaintiff is

concerned that the FBI is still confusing this case with another unrelated FOIA case concerning Pfizer and James O'Keefe.  For example, the FBI refers to the search term "Pfizer.com" to support the adequacy of its search.  Def's Opp. at 11, n.3.  But Pfizer has no relevancy here.  It also still fails to demonstrate that it searched for the terms "O'Keefe" and "Okeefe" in this litigation.  It only represents that it searched for those terms in the unrelated FOIA litigation.  Bender Decl., ¶ 10, citing Seidel Decl., ¶ 26.[3]  If the FBI's page-by-page review was in the context of the unrelated FOIA litigation, then it has no bearing on this litigation.

The FBI also makes several mischaracterizations regarding Plaintiff's position on the search terms.  First, the FBI states that Plaintiff is asking for it to search unidentified pending case file for the term "The New York Times," as well as its logical variations.  This is untrue.  Plaintiff stated that the FBI failed to use those terms in the search of the CRS indices and email records.  Plf's Opp. 9-11.  Second, it argues that Plaintiff stated that the FBI did not search for "James O'Keefe" within the CRS.  This is also untrue.  In fact, Plaintiff expressly acknowledged that the FBI did search the CRS for "James O'Keefe" and Plaintiff accepted that this search would have returned a result for "James OKeefe."  Plf's Opp. at 9, n.2.  Third, the FBI claims that Plaintiff requested a search for the name "James" in the CRS.  Def's Opp. at 10.  But Plaintiff actually stated that the FBI failed to search for "James" *within the already located pending case file*, not the CRS generally.  Def's Opp. at 9.   Plaintiff also suggested that "James" should have been used to search the email accounts because it is entirely reasonable that James O'Keefe might have been referred to simply as "James."  This search can be limited to the requested time frame and even in connection with other terms in a Boolean search.  Read

---

[3]     The Bender Declaration cites to Seidel Decl., ¶26, but that cite only references the search conducted in the unrelated FOIA case.

correctly, Plaintiff's position is entirely reasonable.

The FBI should be ordered to conduct a search with terms that are not the result of its current unduly narrow improper reading of Plaintiff's FOIA request.

## III.    The FBI Is Obligated to Search for Responsive Text Messages and Instant Chats.

The search is similarly deficient for failing to search for responsive text messages and instant chats that were explicitly requested by Plaintiff.  The FBI claims that any responsive text messages and instant chats would be located within the CRS, not any other location, citing two Records Management Policy Guides, one issued in 2022 and the other in 2015.  Def's Opp. at 13; Bender Decl., ¶¶ 15-17.  However, the 2022 Policy Guide, which addresses text messages specifically, was issued almost a full year after the execution of the search warrants.[4]  *See Records and Information Management Policy Guide*, 1223PG (issued September 22, 2022); *see also* Bender Decl. ¶ 15 n.2.  The 2015 Policy Guide in force at the time of the FOIA requests and at the time of the execution of the search warrants does not even require FBI employees to import transitory records, which are still agency records subject to FOIA, into a centralized system.[5]  *See Records and Information Management Policy Guide*, 0769PG, at p. 22 (issued June 4, 2015); *see also* Bender Decl. ¶ 15 n.2.  Whether a record is "transitory" does not absolve the FBI from having to search for these records.  *Reporters Comm. for Freedom of the Press*, 2021 U.S. Dist. LEXIS 215639, *10.  Because the CRS is an incomplete system of electronic records, the FBI should search beyond the CRS for responsive records.

---

[4]      Available at https://vault.fbi.gov/records-and-information-management-policy-guide-1223pg (last accessed June 24, 2023).

[5]      Available at https://vault.fbi.gov/records-management-policy-guide-0769pg-part-01-of-01 (last accessed June 24, 2023).

The FBI also misrepresents the facts that led to the court's finding in *Reporters Comm. for Freedom of the Press*.  There, the court found that the FBI failed to demonstrate that it undertook a good faith effort to search for records responsive to a FOIA request seeking certain email correspondence, text messages, and other electronic messages.  *Reporters Comm. for Freedom of the Press*, 2021 U.S. Dist. LEXIS 215639, *13.  The plaintiff did not, as the FBI states, provide proof that text messages existed.  *See* Def. Opp. at 12-13.  Rather, the plaintiff provided proof that responsive *emails*, not text messages or other electronic communications, existed.  *Reporters Comm. for Freedom of the Press*, 2021 U.S. Dist. LEXIS 215639, *10-11.  As is the case here, the FBI in that case did not conduct a separate search for text messages and instant chats because it believed that an index search of the CRS would include a search for serialized electronic messages.  *Id.* at *9; Bender Decl., ¶¶ 15, 18.  The court rejected this justification, explaining that the CRS is an incomplete repository that does not include potentially responsive transitory records.  *Reporters Comm. for Freedom of the Press*, 2021 U.S. Dist. LEXIS 215639, *10-12.  The same is true here.  The FBI therefore should be ordered to search for these records just as it was ordered to do so in *Reporters Comm. For Freedom of the Press*.

## CONCLUSION

For the reasons set forth in Plaintiff's initial memorandum and the reasons stated above, Plaintiff respectfully requests the Court grant Plaintiff's Cross-Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

Dated:  June 30, 2023

Respectfully submitted,

/s/ *Kathryn Blankenberg*

KATHRYN BLANKENBERG
D.C. Bar No. 1781777
PAUL J. ORFANEDES
D.C. Bar No. 429716
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC  20024
Tel.:    (202) 646-5172
Fax:    (202) 646-5199
Email:  kblankenberg@judicialwatch.org

*Counsel for Plaintiff*